**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MELISSA RALSTON,  )   )  Plaintiff,  )   vs.  )   )  MICHAEL J. ASTRUE, Commissioner )   of the Social Security Administration,  )   )  Defendant.[1] ) | 1:06-cv-854-SEB-JMS |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Melissa Ralston ("Ralston") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I.  BACKGROUND

Ralston filed applications for DIB and SSI on November 7, 2002, and September 30, 2002, respectively, alleging an onset date of disability of September 24, 2002. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on April 13, 2005. Ralston was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Ralston and a vocational expert testified at the hearing. The ALJ issued a decision on October 21, 2005, denying benefits. On March 23, 2006, the Appeals Council denied Ralston's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Ralston met the nondisability requirements for a period of disability under the Act and was insured for benefits through the date of the ALJ's decision; (2) Ralston had not engaged in substantial gainful activity since the alleged onset of disability; (3) Ralston's borderline intellectual functioning, adjustment disorder with depressed mood, degenerative disc disease and hypothyroidism were considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c); (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Ralston's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (6) Ralston had the residual functional capacity ("RFC") to perform light level work with restrictions: lift/carry twenty pounds occasionally and ten pounds frequently; sit/stand/walk for six of eight hours; only simple and repetitive work with no more than superficial interaction with the general public, co-workers, or supervisors; and no work above shoulder height; (7) Ralston was unable to perform any of her past relevant work; (8) Ralston was a "younger individual between the ages of 18 and 44," she had a "limited education," and had no transferable skills from any past relevant work and/or transferability of skills was not an issue in this case; and (9) Ralston had the RFC to perform a significant range of light work; and (10) although Ralston's exertional limitations did not allow her to perform the full range of light work, using Medical-Vocational Rule 201.17 as a framework for decision-making, there were a significant number of jobs in the State economy (a full range of sedentary level work and ninety percent of a full range of light level work) that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Ralston was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Ralston had "severe" impairments of borderline intellectual functioning, adjustment disorder with depressed mood, degenerative disc disease and hypothyroidism, but she could perform a significant number of light and sedentary jobs and, therefore, was not disabled.

Ralston's sole argument is that the ALJ erred in not finding that her impairments met Listing 12.05C. She contends that she has a valid full scale IQ score of 70 (see R. at 513, 535), and that she has severe physical impairments which significantly limit her physical or mental ability to do basic work activities, all of which meets the criteria of the listing.

Listing 12.05C contains the following criteria:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> * * *
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

The introductory paragraph of Listings 12.00 (Mental Disorders) states as follows:

The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. . . . For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.[2]

The ALJ discussed the psychological evaluation conducted on June 8, 2005. (R. at 27-28, 508-537). He noted that Ralston was functioning in the borderline range of intelligence. (R. at 27, 514). He further noted that the psychological report indicated that her concentration was adequate and her mathematical calculations were correct. (R. at 27, 512). The ALJ noted the psychological examiner's indication that Ralston had a lower capacity for abstraction which was somewhat surprising given her average abstract thinking noted on the IQ tests. (R. at 28, 515). The examiner reported that, in general, Ralston's performance was somewhat uneven and, at times, contradictory, suggesting fluctuating cognitive efficiency and awareness. *Id.* Given Ralston's reports of past depression, the examiner reasoned that interfering emotional factors may have contributed to the uneven performance. *Id.* The examiner stated that Ralston was somewhat capable of tolerating normal work activities although fluctuating cognitive efficiency could adversely affect this area. (R. at 28, 536). Ralston could perform simple repetitive tasks and work in settings free of unusual stress relatively well. *Id.* The ALJ further noted the examiner's determinations that Ralston could respond to supervision, she might have some difficulty structuring a daily routine for herself, and her limited comprehension and practical judgment could affect her toleration of contacts with the general public or co-workers. *Id.* The ALJ concluded that Ralston had a mild restriction of activities of daily living, moderate limitations

---

[2]The Seventh Circuit has stated that after the regulations were revised in 2001, a "dual requirement" was introduced. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570-71 (7th Cir. 2003) (in 2001, "the regulations introduced a new, dual requirement"); *Scott v. Barnhart*, 297 F.3d 589, 595-96 n.6 (7th Cir. 2002) ("Thus, in 1996, the regulations did not require that a claimant meet the diagnostic definition of the listing as well as one of the six sets of criteria to establish disability. Indeed, this dual requirement first appears in the Code of Federal Regulations during 2001.").

on social functioning and concentration, persistence or pace, and no episodes of deterioration. (R. at 25). He concluded that Ralston's borderline intellectual functioning and adjustment disorder did not satisfy the B criteria of Listings 12.04 and 12.05. *Id.*

The ALJ also discussed a June 2003 psychological evaluation which concluded that Ralston was functioning largely in the average range of intelligence, had no cognitive impairments and her attention and concentration were quite good. (R. at 26-27, 209-213). Her thought processes were coherent, logical and pertinent. (R. at 26, 212). The psychologist assigned a GAF of 63. (R. at 27, 213).

The ALJ further noted that Ralston had not required any inpatient or outpatient treatment for any mental disorder. (R. at 30). The ALJ noted that Ralston had been consistently employed in semi-skilled jobs until she terminated her employment in 2002, and there were no allegations that her termination was a result of any mental problems. *Id.* He noted that Ralston read books and used the internet to do research and that her daily activities seemed to be limited by her physical complaints rather than any mental condition. *Id.* He stated that the State Agency examiners had found that Ralston had no severe mental impairment. *Id.* The ALJ gave Ralston "the benefit of the doubt" and factored in non-exertional limitations in his RFC assessment. *Id.*[3]

The ALJ referenced the 2005 psychological report which contained the IQ test scores, but he did not recite the scores in his decision. (R. at 27-28, 508-37). He did note the psychological examiner's conclusion that Ralston's diagnosis was borderline intellectual functioning. (R. at 28, 515). The test score results were listed as "Sum of Scaled Scores verbal IQ 42, performance IQ 28, and full scale IQ 70" and as "IQ/Index Scores verbal IQ 82, performance IQ 73, and full scale IQ 76." (R. at 513). The Commissioner argues that Ralston's verbal, performance, or full scale IQ scores were not low enough to fall within the scope of Listing 12.05C, from 60 through 70. The Commissioner reasonably contends that the IQ/Index scores are the ones that are converted from the scaled scores to give the examiner the standard scores which are used to indicate cognitive functioning.[4] Given the

---

[3] The ALJ limited Ralston to simple and repetitive work with no more than superficial interaction with the general public, co-workers and supervisors. (R. at 31).

[4] "At the end of the test, you tally the scores for their answers on each subtest (your first set of numbers, called "raw scores"). You then convert these to a second set of numbers (called "scaled scores"), so we can compare performance on subtests. You then add these to come up with a third set of numbers (called "sums of scaled scores") which represent aggregate abilities. These are converted to a fourth set of numbers (called IQ or Index scores) that are standard scores (mean of 100 and standard deviation of 15) and so we can compare the abilities. *These* are the numbers that really tell you about a person's abilities and performance." *Introduction to the WAIS III,* Richard Niolon, Ph.D, August 2005. *See* www.psychpage.com/learning/library/intell/wais_ history.html.).

evidence which shows that Ralston's IQ scores were not within the range of the threshold criteria of Listing 12.05C and the lack of any other evidence indicating that Ralston was mentally retarded, the ALJ's evaluation of Ralston's mental impairment, including Listing 12.05C, was supported by substantial evidence.

In determining Ralston's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Ralston's age, education, and work history; (2) Ralston's history of diagnoses, treatment, medications, and evaluations; (3) Ralston's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Ralston and a vocational expert. The ALJ sufficiently articulated his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). The ALJ built an "accurate and logical bridge from the evidence to his conclusion." *Lopez ex rel. Lopez v. Barnhart*, 336 F3d 535, 539 (7th Cir. 2003) (internal quotation omitted). There was substantial evidence to support the ALJ's determination that Ralston was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Ralston's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Ralston is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/31/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana